# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESMERALDA GONZALEZ,<br><br>               Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>              Defendant. | No. 1:16-cv-03157-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 16, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 16) and grants Defendant's motion (ECF No. 17).

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff protectively applied for Title XVI supplemental security income benefits and for Title II disability insurance benefits on June 27, 2012, alleging an onset disability date of April 1, 2011.  Tr. 196-211.  The applications were denied initially, Tr. 115-32, and on reconsideration, Tr. 133-43.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 10, 2014.  Tr. 33-60. On March 27, 2015, the ALJ denied Plaintiff's claim.  Tr. 15-32.

At the outset, the ALJ determined that the date last insured is September 30, 2014.  Tr. 20.  At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 1, 2011, the

alleged onset date.  Tr. 20.  At step two, the ALJ found Plaintiff has the following

severe impairments:  migraine headaches and affective disorder.  Tr. 21.  At step

three, the ALJ found Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment.  Tr.

22.  The ALJ then concluded that Plaintiff has the following RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and
> 416.967(c) except she can lift up to 50 pounds occasionally; she can
> lift and or carry 25 pounds frequently; she can stand and or walk for
> approximately 6 hours and sit for approximately 6 hours per 8 hour
> workday with normal breaks; she is limited to simple, repetitive tasks;
> and she is limited to superficial interaction with coworkers and only
> occasional and superficial interaction with the public.

Tr. 23.

At step four, the ALJ found Plaintiff is unable to perform her past relevant

work.  Tr. 26.   At step five, after considering the testimony of a vocational expert,

the ALJ found there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform, such as hand packager, laundry worker, and

industrial cleaner.  Tr. 27.  Thus, the ALJ concluded Plaintiff has not been under a

disability since April 1, 2011, the alleged onset date through the date of the

decision.  Tr. 27-28.

On August 16, 2016, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI and disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly weighed the medical opinion evidence;

2.    Whether the ALJ properly discredited Plaintiff's symptom claims; and

3.    Whether the ALJ properly determined the severe impairments at step two.

ECF No. 16 at 6.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ gave too little weight to the opinion of Nina Rapisarda, MSW, and gave too much weight to the opinions of Drew Stevick, M.D., and Gary Nelson, Ph.D. ECF No. 16 at 7-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§

404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

### 1. Ms. Rapisarda

In February 2007, Ms. Rapisarda evaluated Plaintiff and opined that Plaintiff could work approximately 11-20 hours a week due to depression and PTSD. Tr. 486-87. The ALJ noted that she considered the opinion, but gave it "little weight." Tr. 26. As a social worker, Ms. Rapisarda is an "other source" under the regulations. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[1] Thus, the ALJ was

---

[1] This regulation was amended on March 27, 2017.

required to cite germane reasons for rejecting the opinion. *See Dodrill*, 12 F.3d at 919.

First, the ALJ rejected Ms. Rapisarda's opinion because it was rendered in February 2007, more than four years prior to the alleged disability onset date of April 2011. Tr. 26. Given the gap of more than four-years, this is not an instance where the opinion was rendered close in time to the alleged onset date. Under these circumstances, the pre-onset timing of Ms. Rapisarda's opinion is a germane reason to discount it. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

Second, the ALJ rejected the opinion because the assessed limitations were limited to a ten-month period. Tr. 26. Here, the ALJ correctly noted that Ms. Rapisarda opined that Plaintiff's condition would limit her ability to work, look for work, or train for work for ten months. Tr. 487. Ms. Rapisarda indicated that Plaintiff would benefit from medication management services and therapy. Tr. 487. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Here, because Ms. Rapisarda opined limitations lasting for ten

months, the duration requirement for a finding of disability is not met.  Moreover, the Court further notes that the limitations would have expired three and a half years prior to the alleged onset date.  This is another germane reason to discount the opinion.

Plaintiff contends that the ALJ should have concluded that Ms. Rapisarda's assessed limitations were relevant from the date rendered, February 2007, throughout the disability period, ending in March 2015, because Plaintiff "continued to suffer severe psychiatric impairments for years forward."  ECF No. 16 at 9-10.  Plaintiff has cited no authority nor has the Court located authority to support extending limitations assessed for a ten-month period to over an eight-year period.  As noted by Defendant, in the interim, Plaintiff obtained employment and worked for a period, engaged in substantial daily activities, and her medical record does not support the alleged limitations, discussed *infra*.  It would be inappropriate under these circumstances to extend the limited-duration restrictions to the relevant disability period.  Moreover, given the subsequent medical record in this case, the 2007 opinion did not create an inconsistency or ambiguity in the evidence requiring the ALJ to further develop the record.

### 2. Dr. Stevick

In January 2013, Dr. Stevick, a state agency psychological consultant reviewed Plaintiff's record and opined that Plaintiff could lift 50 pounds

occasionally and 25 pounds frequently; stand and/or walk with normal breaks 6 hours in an 8-hour work day; and sit with normal breaks 6 hours in an 8-hour workday.  Tr. 92-94, 105-06.  The ALJ gave this opinion "significant weight."  Tr. 26.  The ALJ noted that Dr. Stevick reviewed the record; his opinion is consistent with the record; the record indicated intermittent problems with headaches; Plaintiff's headaches appeared mostly controlled by medication; and Plaintiff continued to function even without medication for headaches during the course of her pregnancies.  Tr. 26.

Plaintiff contends the ALJ erred in giving significant weight to this opinion.  ECF No. 16 at 10-11.  First, Plaintiff contends that the ALJ erred by referring to her headaches as "intermittent," instead, contending she experienced them regularly, up to three times per week.  ECF No. 16 at 10.  In support of her argument, she cites a treatment record from January 2010, where she told a treatment provider that she was down to two headache days per week (eight days per month) from 30 days per month, which the provider interpreted as a 75% improvement, Tr. 299; and an April 2010 office visit record where she was seen for a headache that lasted three days, Tr. 323.  These records do not demonstrate that the ALJ's conclusion was unsupported.  Moreover, the Court notes that Plaintiff's medical provider referred to her migraines as "intermittent."  *See* Tr. 329 (February 2010 treatment note stating "patient has a two-year history of

intermittent migraine headaches. The patient states that she gets approximately 3 per week.").[2] In addition, in April 2014, Plaintiff sought treatment for a migraine. At the time, she told the treatment provider, it is the kind of headache she gets in the spring and summer, Tr. 458, which is evidence consistent with the ALJ's characterization of the occurrence as "intermittent." Given that the ALJ referred to the frequency of Plaintiff's headache in the same manner as one of Plaintiff's treating physicians and in a manner consistent with a substantial portion of the treatment records, the Court finds no error.

Next, Plaintiff contends that the record does not support the ALJ's conclusion that her headaches were "mostly controlled" by medication. ECF No. 16 at 10. In support of the ALJ's conclusion, she cited the January 2010 treatment note indicating when Plaintiff made lifestyle changes and took medication, her headaches improved by 75%. Tr. 22 (citing Tr. 299). This was a reasonable interpretation of the evidence by the ALJ. Finally, Plaintiff challenge the ALJ's conclusion that she was able to function when not taking her medication. ECF No. 16 at 11. As discussed *infra*, the ALJ identified the numerous daily activities that

---

[2] Subsequent to 2010, Plaintiff's medical records routinely describe her migraine history as "migraine, common, not intractable." *See, e.g.*, Tr. 368, 372, 375, 379, 430, 437, 444, 458-59, 462, 477.

Plaintiff was able to engage in while pregnant and not taking medication,[3] which undermined her symptom complaints, Tr. 25. Moreover, in 2014 while pregnant and not taking medication, Plaintiff only sought treatment for headaches on two occasions. Tr. 430-36; 458-61. This was a reasonable interpretation of the evidence. Since the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, the ALJ set forth specific, legitimate reasons for crediting Dr. Stevick's opinion. Significantly, Plaintiff has not identified any provider who assessed any more restrictive limitations related to her headaches.

### 3. Dr. Nelson

In November 2012, non-examining state agency psychological consultant Dr. Nelson opined that Plaintiff was capable of simple routine tasks and some complex tasks on a consistent basis while maintaining adequate concentration, persistence, and pace, and was able to interact with the general public and coworkers on an occasional superficial basis and with supervisors on a more frequent basis. Tr. 69-71. The ALJ gave "great weight" to this opinion. Tr. 26. The ALJ noted that Dr. Nelson reviewed the record; his opinion is consistent with

_____

[3] At the hearing, Plaintiff testified that she was not taking her migraine medication while she was pregnant. Tr. 53.

the record; mental status exam findings indicate no unusual anxiety or evidence of depression; and Plaintiff had not consistently engaged in mental health treatment, which indicated her mental health symptoms were not as severe as alleged.  Tr. 26.

First, Plaintiff contends the ALJ misstated the record in finding that the mental status exams did not show any unusual anxiety or depression.  ECF No. 16 at 12.  In support, Plaintiff cites two treatment records.  *Id.*  On January 26, 2010, Plaintiff presented at her doctor's office in crisis, three days after her abusive boyfriend hit her and threw her against a wall in front of her children; she was crying and upset.  Tr. 331.  Plaintiff's response to this situational event[4] that occurred 15 months prior to her alleged onset date does not undermine the ALJ's assessment of the medical evidence.  Plaintiff next cites a mental health record from November 2012, where Plaintiff was tearful during her session.  ECF No. 16 at 12 (citing Tr. 394).  These two records do not undermine the ALJ's weighing of the evidence.  Here, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's exams resulted in normal findings.  *See, e.g.*, Tr. 382

---

[4] The ALJ previously noted that the record demonstrated that Plaintiff was engaged in an abusive relationship in early 2010.  Tr. 21.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

(Sept. 2011 office visit: neurological exam normal and "psychiatric: alert and oriented. No unusual anxiety for evidence of depression").[5]

Next, Plaintiff contends the ALJ erred in giving Dr. Nelson's opinion more weight because Plaintiff did not consistently seek mental health treatment. ECF No. 16 at 12. In support, Plaintiff contends that this is an inaccurate representation of the record and cites to mental health treatment records, showing four appointments, in January 2010 (Tr. 332), in May 2010 (Tr. 318), in November 2012 (Tr. 394), and in January 2013 (Tr. 392). The Court notes that in the five year period for which records were provided (2010-2014), Plaintiff sought treatment on only four occasions. Only two of those appointments occurred in the

---

[5] *See also* Tr. 424 (July 2014 treatment note: appropriate interaction, negative for headache/psychiatric symptoms, alert and oriented, no unusual anxiety or evidence of depression); Tr. 460 (April 2014 treatment note: no unusual anxiety or evidence of depression); Tr. 475 (Dec. 2013 treatment note: psychiatric-patient is oriented to time, place, person, and situation); Tr. 477 (Nov. 2012 treatment note: negative for psychiatric symptoms, no unusual anxiety or evidence of depression ); Tr. 376-77 (Nov. 2011 treatment note: appropriate interaction, negative for headache/ psychiatric symptoms); Tr. 379-82 (Sept. 2011 treatment note: alert and oriented, no unusual anxiety or evidence of depression).

relevant period.  Here, Plaintiff alleged disabling anxiety.  As discussed *infra*, the ALJ reasonably concluded that Plaintiff's credibility was undermined by her minimal mental health treatment.

Significantly, Plaintiff has not identified any medical source statement given during the relevant period who assessed any greater functional limitations than assessed by the reviewing physicians, whose opinions she challenges.  The ALJ properly weighed the medical evidence.

**B. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 16 at 13-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Molina*, 674 F.3d at 1112.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5    citations and quotations omitted). "General findings are insufficient; rather, the

6    ALJ must identify what testimony is not credible and what evidence undermines

7    the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834 (9th Cir. 1995));

8    *Thomas*, 278 F.3d at 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

9    determination with findings sufficiently specific to permit the court to conclude

10   that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and

11   convincing [evidence] standard is the most demanding required in Social Security

12   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

13   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

14       In making an adverse credibility determination, the ALJ may consider, *inter*

15   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16   claimant's testimony or between her testimony and her conduct; (3) the claimant's

17   daily living activities; (4) the claimant's work record; and (5) testimony from

18   physicians or third parties concerning the nature, severity, and effect of the

19   claimant's condition. *Thomas*, 278 F.3d at 958-59.

20

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 24.

### 1. Unemployment Benefits

First, the ALJ gave less weight to Plaintiff's testimony because she collected unemployment benefits in 2011 and 2012, during the time she alleges disability. Tr. 24-25. While the receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether Plaintiff held herself out as available for full-time or part-time work. According to the Ninth Circuit, only the former is inconsistent with her disability allegations. *See Carmickle*, 533 F.3d at 1162-63. This is not a clear and convincing reason to discredit Plaintiff's symptom claims. However, any error is harmless because, as discussed *infra*, the ALJ gave additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See id.* at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one

impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 2. *Improvement with Treatment*

The ALJ found that Plaintiff's claims lacked credibility because Plaintiff improved with treatment and lifestyle changes. Tr. 25. An ALJ may rely on examples of "broader development" of improvement when finding a claimant's testimony not credible. *Garrison*, 759 F.3d at 1017-18. Moreover, the effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Specifically, the ALJ noted that the "medical records indicate a 75 percent improvement in headaches after [Plaintiff] made lifestyle changes, including daily exercise, weight loss, leaving an abusive boyfriend, and going back to school." Tr. 25 (citing Tr. 299) (noting Plaintiff is "back to occasional migraines"). In January 2010, Plaintiff reported to her provider that her headaches had decreased down from daily to twice a week, which the provider estimated to be

a "75% improvement" and which the provider attributed to medication and lifestyle changes. Tr. 299. Plaintiff contends she reported her headaches worsened for a period after a domestic violence assault. ECF No. 16 at 5. As discussed *infra*, however, Plaintiff's complaints of headaches were intermittent during the relevant period. Although the evidence of improvement with medication in this case may be interpreted more favorably to the Plaintiff, such evidence is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The ALJ's interpretation of the evidence was reasonable. This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Medical Record

The ALJ found the objective evidence does not support the degree of symptoms alleged. Tr. 25. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20

C.F.R. § 416.929(c)(2); *see also* S.S.R. 96-7p.[6]  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

First, the ALJ noted "[i]n addition to intermittent headache complaints, [Plaintiff's medical records] primarily relate to routine care such as prenatal care."  Tr. 25.  The record supports the ALJ's conclusion.  Here, Plaintiff routinely sought medical care during the relevant period and only occasionally noted complaints regarding headaches.  In 2010, prior to the alleged onset date, Plaintiff's medical records indicate she sought medical treatment on numerous occasions, but specifically noted complaints of headaches on only four occasions.[7]  Significantly,

_____

[6] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms. S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

[7] *See* Tr. 319 (May 4, 2010, reporting that she has headaches two to three times a week that last several hours); Tr. 323 (April 8, 2010 office visit for headache lasting three days); Tr. 329 (Feb. 1, 2010 office visit for migraine); Tr. 312 (Aug. 10, 2010 ER visit after domestic violence assault).  Plaintiff sought medical

from 2011 to 2013, Plaintiff sought medical treatment related to headaches on one occasion[8] despite seeking treatment for numerous other ailments.[9]  Significantly, at the July 10, 2014 hearing, Plaintiff testified since she was assaulted by her boyfriend in 2010, she now has "constant migraines and seizures." Tr. 47.  At the time of the hearing, Plaintiff was pregnant.  Tr. 38.  From December 2013 to July 2014, Plaintiff sought prenatal care on eleven occasions and complained of problems with headaches during only two of those visits;[10] she never complained

---

treatment numerous times and did not mention complaints of headaches.  *See, e.g.*, Tr. 314 (Aug. 2, 2010 gynecological care); Tr. 316 (July 15, 2010 follow up for on the job wrist injury); Tr. 318 (May 4, 2010 depression management); Tr. 321 (April 22, 2010 gynecological care); Tr. 325 (Feb. 25, 2010 sore throat); Tr. 327 (Feb. 17, 2010 gynecological care); Tr. 331 (Jan. 26, 2010 depression after domestic violence); Tr. 334 (Jan. 25, 2010 gynecological care).

[8] Tr. 379 (Sept. 7, 2011 office visit for headaches)

[9] *See, e.g.*, Tr. 477 (Nov. 28 2012 cold); Tr. 368 (April 10, 2012 gynecological care); Tr. 481 (Nov. 16, 2012 bronchitis); Tr. 372 (Jan. 25, 2012 UTI/ear pain); Tr. 375 (Nov. 16, 2011 gynecological care); Tr. 386 (mental health treatment).

[10] *See* Tr. 430-36 (June 11, 2014 prenatal visit; reported migraine for three days); Tr. 458-61 (April 24, 2014 prenatal visit; reported migraine for one day)

of experiencing seizures during her pregnancy.[11]  The medical treatment a Plaintiff

seeks to relieve her symptoms is a relevant factor in evaluating the intensity and

persistence of symptoms.  20 C.F.R. §§416.929(c)(3)(iv), (v); *see also Greger v.*

*Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) (failure to report symptoms to

treatment providers undermines claimant's credibility).  Here, there is substantial

evidence to support the ALJ's conclusion there were minimal complaints regarding

headaches and most of the record relate to routine medical care and prenatal care.

Next, the ALJ noted that "physical exams are mostly within normal limits

including normal neurological exam findings." Tr. 25.  The medical record

supports the ALJ's conclusion.  *See, e.g.*, Tr. 312 (noting that in August 2010,

Plaintiff had extensive workup including CT, Xrays, and labs; all were normal); Tr.

330 (February 2010 neurological exam findings normal); Tr. 382 (Sept. 2011

neurological exam findings normal); Tr. 477-84 (Nov. 2012 neurological exam

_____

[11] During nine visits, she made no complaints of headaches.  *See* Tr. 419-426 (July

8, 2014 prenatal visit); Tr. 427-29 (July 1, 2014 prenatal visit); Tr. 437-43 (May

27, 2014 prenatal visit); Tr. 444-50 (May 14, 2014 prenatal visit); Tr. 451-57

(April 29, 2014 prenatal visit); Tr. 462-64 (April 24, 2014) (prenatal visit); Tr.

465-70 (April 1, 2014 prenatal visit); Tr. 471-72 (March 19, 2014) (prenatal visit);

Tr. 473-76 (Dec. 13, 2013 morning sickness).

findings normal). Plaintiff contends this conclusion is undermined by a CT scan that revealed a frontal lobe calcification which could be specifically linked to her headaches. ECF No. 16 at 14 (citing Tr. 498, 500). Plaintiff is correct that an August CT scan report notes a "small calcification over the left frontal lobe, possibly from an old infectious, inflammatory process." Tr. 498. However, the report concludes "no acute findings." Tr. 498. Contrary to Plaintiff's contention, no medical provider indicated this calcification was related to her headaches. This report does not undermine the ALJ's conclusion regarding the medical record.

Next, the ALJ noted that at the time of the hearing, Plaintiff was not taking medication due to her pregnancy and she dealt with her headaches as best as she could. Tr. 25. As noted above, during her 2014 pregnancy, Plaintiff sought medical treatment related to headaches on only two occasions. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment). The ALJ reasonably concluded that this medical record did not support the severity of the symptoms alleged. This was a clear and convincing reason to discredit Plaintiff's symptom complaints.

### 4. Lack of Treatment

Next, the ALJ found Plaintiff's lack of mental health treatment cast doubt on her credibility regarding the severity of her symptoms. Tr. 25. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. § 416.929(c)(3)(iv), 416.929(c)(3)(v). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch*, 400 F.3d at 681. The ALJ noted that during an initial assessment for mental health treatment in October 2012, Mr. Anderson noted that Plaintiff had last had mental health treatment in May 2007. Tr. 25. The ALJ further noted that Plaintiff had only two follow-up appointments, one in November 2012 and January 2013. Tr. 25.

Plaintiff contends the ALJ erred in this finding because Plaintiff "has been in counseling for most of her life, sought help on numerous occasions, and was medicated." ECF No. 18 at 8. Here, the medical record includes only four instances of mental health treatment from 2010 to 2014, and only two of those are from the relevant period, despite Plaintiff alleging disabling depression and anxiety.

Plaintiff contends that it is a "questionable practice" for an ALJ to find a person less credibly for not seeking mental health treatment. ECF No. 16 at 15. Where the evidence suggests lack of mental health treatment is part of a claimant's

mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14. The ALJ noted that despite her testimony that she has severe anxiety and depression symptoms, Plaintiff sought minimal treatment, two of which resulted from situational crises, and only two of which occurred in the relevant period. There is no evidence that Plaintiff's failure to seek treatment for her mental health issues is attributable to an impairment. As such, this does not negate the ALJ's consideration of Plaintiff's failure to seek treatment in making the credibility determination.

### 5. *Daily Activities*

The ALJ found that Plaintiff's "activities of daily living are inconsistent with the severity of her self-reported symptoms." Tr. 25. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. Notwithstanding, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557,

561 (9th Cir. 1987).  However, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.  "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

Plaintiff testified that she lived alone with her four children, ages 12, 11, 6, and 15 months (at the time of the hearing), one of which has special needs or behavioral problems.  Tr. 37-38, 40-41.  Plaintiff indicated that her days were primarily filled by caring for her children.  Tr. 44.  The ALJ noted that in a November 2012 Adult Function Report, Plaintiff indicated that each day she would get up, shower, take her kids to school, clean her home and fix a large meal for her family.  Tr. 271.  She stated that she takes care of her children, including cooking, doing laundry, and bathing.  Tr. 271.  She indicated she has no problem with personal care and on a daily basis prepares a large meal that takes approximately an hour.  Tr. 272.  She further indicated she has no limitations with household chores, such as cleaning, laundry, household repairs, ironing, and mowing.  Tr. 272.  She reported that she leaves her house daily for appointments and to take her children to school; she drives a car; is able to go out of the home alone, and

regularly goes out shopping for clothing, groceries, and personal needs. Tr. 273.

She reported she is able to pay bills, handle a savings account, count change, and

use a checkbook. Tr. 273. The evidence of Plaintiff's daily activities in this case

may be interpreted more favorably to the Plaintiff, however, such evidence is

susceptible to more than one rational interpretation, and therefore the ALJ's

conclusion must be upheld. *See Burch*, 400 F.3d at 679. Here, Plaintiff's daily

activities were reasonably considered by the ALJ to be inconsistent with the

Plaintiff's claims of disability headaches, depression, and anxiety.

## C. Severe Impairments

Next, Plaintiff contends the ALJ improperly failed to find seizure disorder

was a medically determinable impairment at step two. ECF No. 16 at 17-20.

Plaintiff bears the burden to establish the existence of a severe impairment

or combination of impairments, which prevent her from performing substantial

gainful activity, and that the impairment or combination of impairments lasted for

at least twelve continuous months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c),

416.909; *Edlund*, 253 F.3d at 1159-1160.

A physical or mental impairment is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§

423(d)(3), 1382c(a)(3)(D). An impairment must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96–4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or description of the impact of" the impairment).

The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[12] An impairment does not limit an ability to do basic work activities where it "would have no more

_____

[12] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31

than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.1521(b); S.S.R. 85-28.

Here, the ALJ found that Plaintiff has the following severe impairments: migraine headaches and affective disorder. Tr. 21. The ALJ noted that Plaintiff "has reported she had seizures due to headaches." Tr. 21. However, the ALJ found "there is no objective medical evidence to support a seizure disorder," and further concluded that Plaintiff "has no medically determinable seizure impairment" and alternatively, even if established, the ALJ found that it is non-severe. Tr. 21.

The ALJ did not err in determining seizure disorder was not medically determinable. Although Plaintiff has reported a history of seizures, such complaints were not born out in her treatment records. No acceptable medical source diagnosed seizure disorder. In support of her argument, Plaintiff cites to certain treatment records, however, those records reflect Plaintiff reported seizures;

no acceptable medical source diagnosed a seizure disorder. *See* ECF No. 16 at 17

(citing Tr. 379 (September 2011 treatment note stating "Pt states she gets seizures

due to her headaches"); Tr. 296 (March 2010 treatment note stating that current

medication is "Gabapentin 3 mg a day," no mention of seizures); Tr. 394 (mental

health progress note stating Plaintiff reported "her pregnancy is considered high

risk due to her seizures")).[13]  An impairment cannot be established by Plaintiff's

symptom complaints alone. *Ukolov*, 420 F.3d at 1005.

Plaintiff contends that a CT scan showing "a small calcification" on her left

frontal lobe supports the impairment of seizure disorder. ECF No. 16 at 17-18

(citing Tr. 498 (2010 CT scan noting "[s]mall calcification over the left frontal

lobe, possibly from an old infectious, inflammatory process," but noting that the

impression was "no acute findings")). Such observation, however, is not a

diagnosis by an acceptable medical source that she has seizure disorder. *See*

*Ukolov*, 420 F.3d at 1006 (9th Cir. 2005). No doctor or acceptable medical source

indicated the calcification was in any way related to seizures, nor diagnosed

seizure disorder.

_____

[13] Significantly, the Court notes that Plaintiff's 2013-2014 prenatal treatment

records for her most recent pregnancy made no notation of Plaintiff complaining of

any seizure activity. *See, e.g.*, Tr. 419-76.

Alternatively, the ALJ concluded that Plaintiff's seizures, if an impairment, were not severe. Plaintiff has identified no evidence in the record indicating that Plaintiff's seizures impacted her ability to work.

Furthermore, even if the ALJ should have determined that seizure disorder is a severe impairment, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch*, 400 F.3d at 682. Plaintiff makes no showing the condition mentioned creates limitations not already accounted for in the RFC and otherwise fails to develop the argument. *See Carmickle*, 533 F.3d at 1161 n.2 (determining issue not argued with specificity may not be considered by the Court). Thus, the ALJ's step two finding is legally sufficient.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 16) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 17) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

1    DATED August 8, 2017.

2              _s/Mary K. Dimke_
             MARY K. DIMKE
3            UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20